IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MADELINE APOLLO,                         :
                                         :
            Plaintiff,                   :
                                         :          CIVIL ACTION
       v.                                :
                                         :          NO.  11-6684
PENNSYLVANIA CONVENTION                  :
CENTER AUTHORITY, et al.,                :
                                         :
            Defendants.                  :

## MEMORANDUM OPINION

Tucker, J.                                                  June ___, 2012

    Presently before the Court are Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 12); Plaintiff's Response in Opposition thereto (Doc. 14); and Defendants' Reply to Plaintiff's Response (Doc. 15, Ex. A). For the reasons set forth herein, Defendants' Motion is granted in part and denied in part.

## I.    FACTUAL BACKGROUND

    The relevant facts, construed in the light most favorable to Plaintiff, are as follows. Plaintiff, Madeline Apollo ("Apollo"), began working for Defendant, the Pennsylvania Convention Center Authority ("PCCA"), in 1991, and became its Chief Financial Officer ("CFO") in 1998. (Am. Compl. ¶ 14). In 2004, Plaintiff entered into an employment agreement with the PCCA. Some of the most pertinent terms included:

> 2. TERM. Unless earlier terminated in accordance with the provisions of Section 6 hereof, this Agreement will continue for an initial period beginning as of the Effective Date of October 04, 2004 and ending 5 year(s) from the Effective Date (the "Initial Term") . . .

> 6. TERMINATION. a. The Authority reserves the right to terminate this Agreement for cause at anytime. . . . b. This Agreement may also be terminated without cause by either party giving ninety (90) days written notice of termination to the other party. In the event of a termination by the [Authority] without cause, the Authority shall pay Apollo severance in the amount of her Base Salary (including continued cost of living adjustments) for a period of 2 years commencing on the date of termination. Such severance compensation shall be payable in a lump sum within thirty (30) days of such termination. In addition, upon a termination without cause by the Authority, the Authority will provide Apollo with the benefits described in Section 4 hereof for a period of 2 years from the date of termination or until Apollo obtains employment providing for similar benefits, whichever first occurs. . . .

(Pl.'s Ex. 4). Plaintiff's duties as CFO included providing truthful and accurate financial reports for the PCCA to the Commonwealth of Pennsylvania, the City of Philadelphia, and the PCCA's outside auditors, Mitchell & Titus, including "statuorily mandated reporting of information concerning the financial plan for the Convention Center's nearly billion dollar expansion project." (Am. Compl. ¶¶ 18-19). As CFO, Plaintiff also oversaw the Human Resources ("HR") and Information Technology ("IT") departments. (Am. Compl. ¶ 16).

In 2008, with the support of State Representative Dwight Evans, and Vice Chairman of the Senate Appropriations Committee, Carl Singley, Defendant Ahmeenah Young ("Young") was appointed as the Chief Executive Officer ("CEO") and President of the PCCA. Plaintiff alleges that she was retaliated against by Defendant Young and other co-conspirators, including Reed Smith, defense counsel in the present case, for objecting to and exposing misconduct and abuse of public funds within the PCCA. (Am. Compl. ¶¶ 62-63).

Plaintiff offers a detailed account of this alleged misconduct in her seventy-five page Amended Complaint. For example, Plaintiff observed Young grant a housekeeping contract for the PCCA to "Team Clean," a company owned by Young's friend, while disregarding the

ordinary request for proposal ("RFP") process and Plaintiff's concerns regarding whether Team Clean was financially able to complete the job, and without obtaining the Commonwealth's approval. (Am. Compl. ¶¶ 72-102).

Additionally, as the head of the HR department, Plaintiff was advised of inappropriate comments that Stephanie Boyd ("Boyd"), a Convention Center Vice President, made to a subordinate African American employee. (Am. Compl. ¶ 103). Boyd apparently asked "how black are you? . . . Don't you know that black women are running the Convention Center and you would go further if you were more black." (Am. Compl. ¶ 104). That comment was eventually reported to George Brunner ("Brunner"), the Chief Technology Officer, who reported it to Plaintiff. (Am. Compl. ¶ 105). Boyd actually admitted to making the comment. (Am. Compl. ¶ 109). When Plaintiff reported the comment to Defendant Young, and advised her that there had been several other complaints against Boyd, Defendant Young refused to permit Boyd to be disciplined for her misconduct, and refused to report the complaints to the Board. (Am. Compl. ¶¶ 111, 123-24). Young then stripped Plaintiff's HR responsibilities. (Am. Compl. ¶ 112). Young also directed Plaintiff to terminate Brunner after a problem occurred with the PCCA computer system, but Plaintiff refused, believing that the termination was retaliation for Brunner reporting Boyd's comment. (Am. Compl. ¶ 113-14; Pl.'s Ex. 3). When Young terminated Brunner herself, as Brunner's supervisor, Plaintiff had to provide an affidavit of facts in connection with the termination, which did not support Young's version of the facts. (Am. Compl. ¶ 115). As a result, Young became increasingly hostile toward Plaintiff. (Id.)

In relation to this incident, an article which references Plaintiff was published in the Philadelphia Inquirer and other local media on September 27, 2010. The report stated:

Convention Center officials . . . [have] been grappling far more quietly with personnel conflicts involving high-ranking managers. Two months ago, the center fired its chief technology officer, George Brunner, accusing him in court documents of improperly accessing employee e-mails. Brunner . . . also allegedly helped erect unauthorized security cameras near management offices. But just before he was let go, Brunner, who is white, had filed complaints with the U.S. Equal Employment Opportunity Commission alleging retaliation. The allegation, according to sources, involved a racially tinged remark made by one of the center's vice presidents. Brunner reported it to his supervisor. It turns out that that supervisor – chief financial officer Madeline Apollo – is running into her own problems as well. A Convention Center employee of 19 years, Apollo reportedly has had a falling-out with Convention Center president Ahmeenah Young that has some wondering whether Apollo is soon to make an exit. The nature of that dispute concerns a reorganization in which Young shifted certain responsibilities from Apollo to herself. What exactly, is going on at the Convention Center? Brunner, Apollo, and Young declined to comment. But apparently there's a lot more in play than just preparing for the March debut of the building's nearly $800 million expansion.

(Def.'s Ex. 1).

Plaintiff also learned that she was not receiving copies of Reed Smith's legal bills for the PCCA which were being directed to the private law offices of Chairman Riley, preventing Plaintiff from providing full financial disclosures about the PCCA. (Am. Compl. ¶¶ 127-28). Plaintiff also objected to Defendant Young stealing large quantities of food from the Convention Center for private parties and Young's use of the PCCA's credit card to pay for political fundraisers. (Am. Compl. ¶ 144). And in the summer of 2010, Plaintiff objected to Defendant Young's insistence, in the midst of a recession, that Plaintiff find at least a million dollars in public funds for an extravagant party to celebrate the expansion of the PCCA. (Am. Compl. ¶¶ 150-51). Defendant Young also demanded that Plaintiff approve a 25% pay increase for some of Young's friends.  (Am. Compl. ¶ 153). Young also interfered with Mitchell and Titus's independent audit of the PCCA, making Plaintiff question whether she could execute the management representation letter required in connection with the audit. (Am. Compl. ¶ 165).

-4-

On May 24, 2010, Plaintiff was asked to attend a meeting with the PCCA's Board of Directors to address these instances of misconduct. (Pl.'s Resp. Mot. Dismiss, Ex. 1). During this meeting Plaintiff provided a "Board Response" – a document identifying the "major issues" with PCCA's management accompanied by documentation including e-mails and other notes supporting Plaintiff's claims. (Id.)

Then on September 30, 2011, Plaintiff met with representatives of the Commonwealth and the City regarding the Convention Center's finances, and was questioned about the PCCA's payment of hundreds of thousands of dollars in legal fees. (Am. Compl. ¶ 166). Plaintiff was prevented from fully responding to these questions, however, because that same day, Defendants, Riley, and Singley terminated Plaintiff. (Id.) Defendants terminated Plaintiff "for cause" after she refused to sign the audit management representation letter, alleging that "she spoke to the press; was insubordinate for responding to requests by Convention Center Board members for information regarding Stephanie Boyd's misconduct; spoke to Al Mezzaroba, the former CEO of the Convention Center; . . . and that she had requested to see Ms. Boyd's employment file." (Am. Compl. ¶ 169). Plaintiff requested, but was denied an opportunity to address the Convention Center Board of Director regarding these allegations. (Am. Compl. ¶ 170).

Plaintiff now brings this lawsuit against Defendants Young and PCCA alleging breach of contract; promissory estoppel; violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"); violation of her constitutional rights to procedural and substantive due process and equal protection; retaliation in violation of the First Amendment; and § 1983 civil conspiracy. Jurisdiction over Plaintiff's claims is proper pursuant to 28 U.S.C. § 1331 and 28

U.S.C. § 1332.

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to

the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384

(3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to

state a claim.  See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000).

The question is whether the claimant can prove any set of facts consistent with his or her

allegations that will entitle him or her to relief, not whether that person will ultimately prevail.

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer

468 U.S. 183 (1984); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of a motion to

dismiss, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or

sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion Sch.

Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that

"a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

than labels and conclusions, and a formulaic recitation of a cause of action's elements will not

do." Bell Atl. Corp. v. Twombly et.al., 550 U.S. 544, 555 (2007).  Such allegations are "not

entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6)

motion to dismiss.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  In Twombly the Court

made clear that it would not require a "heightened fact pleading of specifics, but only enough

facts to state a claim to relief that is plausible on its face." Id. at 570.  A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009 the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  There the Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice to defeat a Rule 12(b)(6) motion to dismiss. Ashcroft, 129 S. Ct. at 1949.  In evaluating whether a Plaintiff has met the pleading requirements, a district court must identify "the 'nub' of the . . . complaint -- the well-pleaded, nonconclusory factual allegation[s]." Id.  "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at1950.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion to dismiss.  First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211.  If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. Id.

III.    **DISCUSSION**

   A.    **Breach of Contract and Procedural Due Process-Property Interest**

   Defendants argue that Plaintiff cannot establish that the PCCA deprived her of a cognizable property interest in violation of her right to procedural due process, or that she was subject to an enforceable employment agreement which would give rise to a cognizable breach of contract claim. In Pennsylvania, to demonstrate a breach of contract claim, a Plaintiff must first prove the existence of a contract. Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003). To establish a claim for procedural due process, on the other hand, a plaintiff must establish that she was deprived of a "cognizable liberty or property interest. To establish a property interest, a person must demonstrate that she had "a legitimate claim of entitlement to it." Cooley v. Pa. Hous. Fin. Agency, 830 F.2d 469, 471(3d Cir. 1987) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). "[A]n at-will employee does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (citing Chabal v. Reagan, 841 F.2d 1216, 1223) (3d Cir. 1988)).  Thus, both Plaintiff's procedural due process and breach of contract claims depend upon whether her employment agreement established a "for-cause" employment relationship with PCCA.

   Public employees in Pennsylvania are, by default, employees at will, and will be subject to summary removal unless the government agency for which they work has been specifically authorized by the legislature to provide its employees with tenure status. Cooley, 830 F.2d at 470. Absent explicit enabling legislation from the legislature, a government agency cannot confer "for cause" employment status on its employees. Elmore, 399 F.3d at 283. Moreover,

-8-

even if an agency intends to confer tenure status upon its employees, such a conferral is

unenforceable if the agency "simply had no authority to do so." Id. at 283.

Defendants are correct that the PCCA did not have authority to enter into a "for cause"

employment agreement with Plaintiff. Plaintiff relies upon two separate provisions in the

PCCA's enabling legislation to establish the PCCA's authority to enter into employment

agreements. First, 64 Pa. C.S.A. § 6006 grants the PCCA the power

> to appoint all officers, agents and employees required for the performance of its
> duties and fix and determine their qualifications, duties and compensation and retain
> or employ other agents or consultants, including architects, auditors, engineers,
> private counsel and private consultants, on a contract basis or otherwise for
> rendering professional or technical services and advice.

64 Pa. C.S.A. § 6006(b)(19). Plaintiff also cites to § 6016, on the award of contracts, which

states that

> Nothing in this section or in any other law of the Commonwealth shall preclude the
> board, with the approval of eight members of the board, from negotiating contracts
> for management, operation, concession services, licensing or leasing of a convention
> center. The authority shall not award any contract to any manager, operator,
> concessionaire, licensee, lessee or lessor that exceeds three years in duration unless
> eight members of the board approve the awarding of a contract for a greater period
> of time.

64 Pa.C.S.A. § 6016(c).

Unfortunately for Plaintiff, neither of these provisions provide the explicit authorization

for the PCCA to enter into employment agreements which courts of this state and circuit have

required. In the seminal case in this area, Scott v. Philadelphia Parking Authority, the

Philadelphia Parking Authority ("Parking Authority") offered the plaintiff a contract of

employment for a term of three years at an annual salary of $15,000. 166 A.2d 278, 280 (Pa.

1960). Shortly thereafter, those in the Parking Authority who entered into the contract with the

plaintiff were replaced by new members who reduced the plaintiff's salary to $10,000, and the plaintiff brought suit for the difference between the two salaries. Id. The Supreme Court of Pennsylvania had to determine the validity of a contract which gave "an appointed employee of a public authority a tenure for a period of three years at a fixed salary." Id.  Because the statute at issue gave the Parking Authority the power "to appoint officers, employees and agents and to fix their compensation, not to enter into contracts of employment," the court held that the contract at issue was "invalid and unenforceable in its entirety." Id. at 281.

Similarly, in Cooley, the plaintiff pointed to legislation which authorized the Pennsylvania Housing Finance Authority ("PHFA") to "enter into contracts of all kinds," and to "employ . . . officers, agents, employes, professional and business advisors . . . and to fix their compensation." Cooley,  830 F.2d at 472. The Third Circuit held that "[b]ecause of the long tradition of at-will public employment, it must be assumed that when the legislature speaks, it does so explicitly, and if, in their wisdom, it chose to grant tenure to the PHFA employees, it would have enacted an appropriate provision." Id. at 472. Likewise, in Demko v. Luzerne County Community College, the enabling statute for the community college empowered it to "make policies providing for the admission and expulsion of students, the courses of instruction, the tuition and fees to be charged and for all matters related to the government and administration of the college." 113 F. Supp. 2d 722, 730 (M.D. Pa. 2000). Although the plaintiff argued that this provision "necessitate[d] the hiring of qualified personnel as part of a broad based educational scheme," the district court held that "the community college enabling legislation does not authorize the College to alter the employment-at-will status of administrators such as [plaintiff]." Id. at 732. The district court explained that a court "may not

infer the legislature's intent from a statute that is on the fringe of the issue." Id. at 733.

The provisions which Plaintiff cites in the PCCA-enabling statute are equally broad and "on the fringe of the issue."  Similar to Scott, § 6006 merely permits the PCCA to appoint officers, agents, and employees, and not to enter into contracts with them. It is rather clear from the language of the statute that the phrase "on a contract basis" applies only to PCCA's power to "retain or employ other agents or consultants," and does not go so far as to modify the earlier clause permitting the PCCA to "appoint all officers, agents, and employees." Moreover, § 6016, titled "Awarding of Contracts," in addressing subjects such as "lowest responsible bidder" and "supplies and materials" is clearly inapplicable to the PCCA's relationship with its own employees. The enabling statute is therefore void of explicit language authorizing the PCCA to provide its employees with tenure status. Because the PCCA lacked the authority to contract for tenured employment with Plaintiff, the employment agreement is void in its entirety, regardless of the PCCA's intentions in requiring Plaintiff to sign an employment agreement. Thus, Plaintiff cannot establish the existence of a valid contract or a legitimate property interest in her employment. Consequently, Plaintiff's claims against all Defendants for breach of contract and procedural due process based upon a property interest must fail.[1]

**B.     Promissory Estoppel**

---

[1]The Court also rejects Plaintiff's contention that Defendants are precluded from contesting the validity of Plaintiff's employment agreement because Defendants made the same argument in a motion to dismiss which the Honorable Judge Schiller denied in a case brought by a different plaintiff. In order for collateral estoppel to apply, the issue must have been actually litigated and determined by a valid and final judgment. O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062, 1065-66 (3d Cir. 1991). Although Judge Schiller denied the motion, which included numerous issues in addition to the breach of contract claim, no rationale for the denial was provided. Therefore, this Court cannot conclude that Defendants are collaterally estopped from making the argument again before this Court.

-11-

Plaintiff also states a claim under the theory of promissory estoppel. "The doctrine of equitable estoppel is not an exception to the employment at-will doctrine. An employee may be discharged with or without cause, and our law does not prohibit firing an employee for relying on an employer's promise." Paul v. Lankenau Hosp., 569 A.2d 346, 348 (Pa. 1990). Thus, Plaintiff may not argue promissory estoppel in an attempt to collect damages for being terminated without cause.

Moreover, Plaintiff has failed to adequately plead a claim for promissory estoppel with regard to the agreement terms surrounding her "without cause" termination, i.e., payment of her severance package. The doctrine of promissory estoppel requires the aggrieved party to show that: 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promise; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000). The second prong typically requires "detrimental reliance" on the promise. Plaintiff generally alleges in her Amended Complaint that [a]bsent such representations and promises on behalf of the Convention Center, Plaintiff Apollo would not have maintained her loyalty and dedication to the Convention Center and had foregone opportunities to seek and obtain employment elsewhere throughout the time of such reliance." (Am. Compl. ¶ 229). However, "detrimental reliance requires more than mere refusal to seek other employment prospects, and  . . . some evidence that other employment opportunities would have been available to the promissee is necessary." Ndubizu v. Drexel Univ., 768 F. Supp. 2d 796, 802 (E.D. Pa. 2011) (citing Ankerstjerne v. Schlumberger, 155 Fed. Appx. 48, 51-52 (3d Cir. 2005)). Here, Plaintiff has failed to plead facts indicating that other

employment opportunities would have actually been available to her had she not entered into the employment agreement with the PCCA. Therefore, her promissory estoppel claim will also be dismissed.[2]

### C.     Procedural Due Process - Liberty Interest

Defendants also dispute that Plaintiff has a cognizable procedural due process claim based upon the deprivation of a protected liberty interest. The Supreme Court has held that "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Hill v. Borough of Kutztown, 455 F.3d 225, 235 (3d Cir. 2006) (quoting Wisconsin v. Constantineau, 400 U.S. 433 (1971)). However, in this Circuit, reputation alone is not a protectable liberty interest. Instead, "a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest," also known as "stigma-plus." Id. at 236. "In the public employment context . . . [t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.' When such deprivation occurs, the employee is entitled to a name-clearing hearing." Id. To demonstrate stigma, plaintiff must allege that the stigmatizing statements were: (1) made publicly, and (2) were false. Id.

The Court cannot read the complaint as adequately alleging that Defendants publicly disseminated a false statement to the public. In her response to Defendants' Motion, Plaintiff

---

[2]Plaintiff also asserts a claim pursuant to the Pennsylvania Wage Payment and Collection Law ("WPCL"). "WPCL does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." Weldon v. Kraft, Inc.,896 F.2d 793, 801 (3d Cir. 1990). The Court has found that the employment agreement between Plaintiff and the PCCA was invalid. Therefore, the Court cannot conclude that the PCCA had a contractual obligation to Plaintiff which would trigger the protections of the WPCL.

relies upon the article in the <u>Philadelphia Inquirer</u> to support her argument that stigmatizing comments were distributed publicly. However, no source is identified in the article, and Defendant Young specifically declined to comment about the article. In addition, the content of the article appears to be true. Plaintiff has alleged herself that Brunner reported the discriminatory comment to her, which resulted in Defendant Young stripping her of some of her duties, all of which eventually led to Plaintiff bringing these problems and others to the attention of the Board. Moreover, although Defendants provided Plaintiff with numerous reasons for her dismissal, Plaintiff has not pled facts to support allegations that those reasons were disseminated to people outside of the PCCA.

### D.      Substantive Due Process

Defendant argues that Plaintiff does not state a substantive due process claim because she has not alleged the deprivation of a protected liberty interest. "The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities." <u>Boyanowski v. Capital Area Intermediate Unit</u>, 215 F.3d 396, 399 (3d Cir. 2000). The right to substantive due process includes the right to be free from government interference with certain fundamental rights. <u>Phillips v. Borough of Keyport</u>, 107 F.3d 164, 179-80 (3d Cir. 1997). Substantive due process protects against only the "most egregious" official conduct, and a plaintiff must prove, as a threshold matter, that the official conduct was so abusive that it "shocks the conscience." <u>Id.</u>

Plaintiff's substantive due process claim is based upon damage to her reputation and ability to gain future employment. This is not the type of claim which is protected by the

-14-

Fourteenth Amendment. The Third Circuit has held that a government agent's defamatory statements which led to a loss of the plaintiff's employment prospects is not the type of conscience-shocking harm which would invoke the substantive due process clause. Boyanowski, 215 F.3d at 402, 404. Such claims, says the Third Circuit, fall under state tort law, rather than the United States Constitution. Id. at 404. Thus, Plaintiff's claims that Defendants' conduct has ruined her reputation are insufficient to support a substantive due process claim. Moreover, a public employee's right to continued employment is not so fundamental as to invoke the protections of substantive due process. Nicholas v. Pa. State Univ., 227 F.3d 133, 143 (3d Cir. 2000) ("[W]e view public employment as more closely analogous to those state-created property interests that this Court has previous[ly] deemed unworthy of substantive due process. . . .").

Plaintiff also contends that she has a substantive due process claim based upon Defendants' violation of her First Amendment right to petition the government and speak freely on matters of public concern. However, the Third Circuit has recognized that "claims governed by explicit constitutional text may not be grounded in substantive due process." Nicholas, 227 F.3d at 143 n.3; see also Albright v. Oliver, 510 U.S. 266, 273 (1994). Therefore, Plaintiff's First Amendment claims must be analyzed within the confines of the First Amendment, and not substantive due process. As a result, all of Plaintiff's substantive due process claims will be dismissed.

### E.    First Amendment Retaliation

Defendants also assert that Plaintiff does not adequately state a claim for First Amendment retaliation. To state a First Amendment retaliation claim, a plaintiff must allege:

"(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." Hill, 455 F.3d at 241. A public employee's statement is protected activity when: (1) the employee spoke as a citizen in making the statement; (2) the statement involved a matter of public concern; and (3) the government employer had no adequate justification for treating the public employee differently from any other member of the public. Id. (citing Garcetti v. Ceballos, 547 U.S. 410, 421 (2006)). Thus, when a public employee speaks pursuant to her official duties, she is not speaking as a citizen, and her statements will not be "insulat[ed] . . . from employer discipline." Ceballos, 547 U.S. at 421.

Plaintiff's retaliation claim must fail because the statements from which the alleged retaliation arose were made as part of her official duties, rather than as a private citizen. As alleged by Plaintiff, as CFO she was responsible for the accuracy and truthfulness of the Convention Center's financial reports to the Commonwealth, the City, and the PCCA's outside auditors. Plaintiff alleges repeatedly in her Complaint that she took certain actions pursuant to her duties as CFO. For example, Plaintiff alleges that Defendants retaliated against her as a result of the Board Response she wrote which detailed Defendant Young's misconduct. (See Am. Compl. ¶ 40). Notably, in the same Complaint, in asserting that the Board Response did not qualify as "insubordination," Plaintiff also states that the Board Response was written at the direction of the Chairman of the Convention Center's Law and Finance Committee. Plaintiff also asserts that she wrote the Board Response in an attempt "to protect the integrity of the Convention Center."(Am. Compl. ¶ 62). Similarly, Plaintiff also alleges that she was retaliated against for: (1) responding to Convention Center Board members requesting the information; (2)

-16-

making investigations required under public accounting rules; (3) attempting to respond to questions of the Commonwealth; and (4) questioning Defendants' failure to comply with the law. All of these actions fall under Plaintiff's duties as CFO.

Although Plaintiff also states that she was retaliated against for "speaking out as a citizen of the United States," this conclusory allegation, without anything to support it, cannot create a First Amendment retaliation claim. Moreover, the Court finds it hard to accept Plaintiff's argument that with each action she took, she was acting as both CFO <u>and</u> a citizen. If every plaintiff bringing a First Amendment retaliation claim could successfully make this argument, the Third Circuit rule distinguishing between citizens and public officials acting within their public duties would be rendered useless. The fact is that Plaintiff has not made any factually supported allegations that she took any actions outside of her employment duties. Therefore, her claim for First Amendment retaliation will also be dismissed.

### F.      Equal Protection

Defendants argue that Plaintiff's class-of-one-theory of equal protection should also be dismissed. In a class-of-one theory, the Plaintiff argues that an employer is forbidden from treating one employee differently from others similarly situated "regardless of whether the different treatment is based on the employee's membership in a particular class." <u>Enquist v. Oregon Dept. Of Agr.</u>, 553 U.S. 591, 598 (2008). The Supreme Court has held that "the class-of-one theory of equal protection has no application in the public employment context." <u>Id.</u> at 607. Thus, Defendants are correct in arguing that Plaintiff's class-of-one equal protection claim should also be dismissed.

However, Plaintiff also argues in her response to Defendants' Motion to Dismiss that

"she was singled out because of her status as a Caucasian woman." This allegation also appears in Plaintiff's Amended Complaint: "Defendant Young and those acting in concert with her, intentionally treated Plaintiff Apollo differently from other similarly situated employees . . . because Plaintiff Apollo is a white woman." (Am. Compl. ¶ 348). To bring a successful claim under Section 1983 for denial of equal protection, the plaintiff must prove purposeful discrimination by showing that she received different treatment from those similarly situated. Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992).

Plaintiff has alleged sufficient facts to demonstrate that she received different treatment from Stephanie Boyd, who is similarly situated to the Plaintiff. Boyd was a Vice President at the Convention Center, and therefore, as an executive officer, was similarly situated to Plaintiff. And, if the facts of Plaintiff's Amended Complaint are taken as true, Boyd was not disciplined for her history of racially motivated misconduct, even after admitting that she made inappropriate racial remarks to one subordinate employee in particular. Plaintiff, on the other hand, was stripped of her HR responsibilities merely for reporting Boyd's conduct. The facts of Plaintiff's Amended Complaint suggest that Boyd was subject to favoritism by Defendant Young to which Plaintiff was not privy. Boyd's comment about "how black" an employee was suggests that Young's favoritism was granted on the basis of race. Therefore, although Plaintiff cannot rely on a class-of-one equal protection claim, her equal protection claim still withstands Defendants' Motion to Dismiss because she has alleged sufficient facts to assert a claim that she was discriminated against on the basis of her race.

### G.   Civil Conspiracy

To succeed on a civil conspiracy under section 1983, the plaintiff must show: "(1) the

existence of a conspiracy; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Victory Outreach Ctr. v. Melso, 371 F.Supp.2d 642, 647 (E.D. Pa. 2004). For most of Plaintiff's claims, she has failed to plead facts demonstrating the deprivation of her civil rights. And for the one claim in which such a deprivation was adequately pled, the equal protection claim, Plaintiff has failed to adequately plead facts which would support the existence of a conspiracy. To establish a conspiracy, of course, Plaintiff would need to plead facts to show the establishment of an agreement by two or more persons to violate her civil rights. However, in the portions of Plaintiff's Amended Complaint which address Stephanie Boyd's treatment, Plaintiff only refers to Defendant Young. For example, it was Defendant Young, and no one else, who refused to discipline Boyd for her racially charged comment; and it was Defendant Young, and no one else, who stripped Plaintiff of her HR responsibilities and became "increasingly hostile" toward Plaintiff after she complained about Boyd's conduct. Plaintiff states no facts which could adequately support an allegation that Defendant Young took these actions in concert with any other person. Therefore, Plaintiff's claim for § 1983 conspiracy will also be dismissed.

## IV.   CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss is denied as to Plaintiff's claim for equal protection, and the Motion is granted with regard to all of Plaintiff's remaining claims. An appropriate order follows.